1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11   EDITH ROBINSON,                        CASE NO. CV-10-0033-JST (RCx)

12              Plaintiff,

13

14        vs.                               **FINDINGS OF FACT AND**
                                            **CONCLUSIONS OF LAW AFTER**
15                                          **COURT TRIAL**
     THE HARTFORD LIFE AND ACCIDENT
16   INSURANCE COMPANY, a Connecticut
     corporation; THINGS REMEMBERED,
17   INC. LONG-TERM DISABILITY PLAN,
     substituted for Things Remembered, Inc.,
18
19              Defendant.
20
21
22
23
24
25
26
27
28

                              1

**I.  INTRODUCTION**

This is an action pursuant to the federal Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  In this action, plaintiff Edythe B. Robinson ("Robinson") seeks to recover benefits she contends were wrongfully denied by defendant The Hartford Life and Accident Insurance Company ("Hartford"), acting as claims administrator for defendant Things Remembered, Inc. Long-Term Disability Plan.  The parties submitted the Administrative Record, briefs, and proposed findings of fact and conclusions of law.  Robinson also submitted supplemental documents that were not part of the Administrative Record, and the parties briefed the issue of whether and to what extent the Court should consider these supplemental documents.  The parties agreed to submit the case to the Court for findings of fact and conclusions of law on the basis of the pleadings, papers, and Administrative Record.

The following constitutes the Court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52.  To the extent that any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the Findings of Fact section, they shall be deemed conclusions of law.

**II.  FINDINGS OF FACT**

1.  Robinson was employed by Things Remembered, Inc. ("Things Remembered") as an assistant retail store manager beginning June 18, 1996.  (Administrative Record ("AR") 1006.)

2.  While employed, Robinson participated in the group long term disability income insurance plan ("Plan"), policy no. GLT-34443 ("Policy"), offered by Hartford to employees of Things Remembered.  (AR 1143.)

3.  On July 4, 1997, Robinson ceased working for Things Remembered.  On the same date, Robinson was placed off work by her physicians and subsequently filed a claim for Long-Term Disability ("LTD") Benefits under the Plan and Policy.  (AR 1006-10.)

4.  In or about November 1997, Robinson submitted an LTD claim to Hartford, premised on shoulder pain and neck pain.  (AR 1006-10.)  She submitted an Attending Physician's Statement, dated October 14, 1997, from Dr. Alonzo J. Flores, her family practitioner, who diagnosed shoulder and neck pain, with symptoms first appearing on April 22, 1997.  (AR 1009-10.)  He found a Class 5 (severe) limitation of functional capacity.  (AR 1010.)  He concluded that Robinson was totally disabled, but would recover sufficiently to perform the duties of her position by December 8, 1997.  (*Id.*)

5.  Hartford obtained medical records from Dr. Flores, as well as Drs. Robert del Junco and Robert R. Beltran, both of whom were otolaryngologists (ENTs) who treated Robinson for a lesion of her left tonsil in 1997.  (AR 926.)

6.  Hartford approved Robinson's claim for benefits, effective October 2, 1997.  (AR 882.)

7.  Despite Dr. Flores' belief that Robinson would recover sufficiently to perform the duties of her position, Robinson never returned to work.

8.  On February 2, 1999, the Social Security Administration issued a Fully Favorable Decision, finding that Robinson was under a disability, and had been under a disability, since July 30, 1998 (later amended to July 30, 1997).  (AR 722-28.)  Robinson's impairments included:

> [S]pinal degeneration with advanced degenerative disc disease at the weight bearing L4/L5 level, status post lumbar surgery and history of disc disease with disc space infection, progressive cervical disc degeneration with disc protrusion, thecal sac impingement, marked narrowing of the left neural foramen, some compression of the cervical spinal cord and degenerative changes at C4/C5, C5/C6 and C6/C7, and status post bilateral carpal tunnel surgeries . . . .

- 2 -

1   (AR 728.)  The Decision stated that Robinson met the insured status requirements

2   regarding disability, that Robinson's impairments were "severe" under the Social Security

3   Act, and that Robinson was precluded from performing any type of work on a regular and

4   continuing basis.  (*Id.*)  Therefore, Robinson was entitled to disability insurance benefits.

5   (*Id*.)

6       9.  On October 2, 1999, Robinson reached the "any occupation" period of the Policy.

7   (AR 135, 1146.)  At that point in time, to qualify as "Totally Disabled," Robinson had to

8   be "prevented from performing the essential duties of any position for which [she was]

9   qualified by education, training, or experience."  (AR 1146.)  Hartford continued to pay

10  Robinson LTD Benefits after October 2, 1999, under the "any occupation" standard for

11  "Totally Disabled."  (AR 709.)

12      10. On November 7, 2001, Hartford arranged for an Independent Medical Examination

13  ("IME") to be performed by Dr. David Drew Neer in order to assess Robinson's disability

14  for Vocational Rehabilitation.  Dr. Neer found that Robinson suffered from cervical

15  spondylosis with significant spinal canal stenosis throughout.  He stated that Robinson

16  remained unable to perform on the job and that she was disabled.  (AR 253-55.)

17      11. On November 13, 2001, Dr. Neer made a written addendum to the IME.  He

18  informed Hartford that he had reviewed all of Robinson's records and took them into

19  account in forming his opinion as to her capability to work.  He concluded, "[Robinson] is

20  currently at maximum medical improvement and I foresee her restrictions to be of a

21  permanent nature . . . ."  (AR 252.)  Moreover, he stated that "due to her left cervical

22  radiculopathy and cervical spondylosis, I do not feel [Robinson] is capable of performing

23  any type of work. I would opine that this would be on a permanent basis, as I do not

24  foresee any improvement in her condition."  (*Id*.)

25      12. On September 29, 2004, Hartford received a report prepared by Dr. Steven

26  Brourman of the California Hand Surgery & Orthopedic Specialists Clinic, Inc.  (AR 275-

27  78.)  He stated that Robinson suffered from "Bilateral cubital tunnel syndrome." (AR 276.)

28  In his report he analyzed "Factors of Disability" and stated, "There is tenderness along

both wrists and diminished light touch in both hands. The estimated bilateral grip loss is 75%." (AR 277.)  Dr. Brourman continued, "In terms of the patient's bilateral hands and elbows, there is an estimated 75% loss of pre-injury capacity for lifting, gripping, grasping, pushing, pulling, squeezing, twisting, torquing, fingering and fine manipulative tasks." (*Id.*)

13. On March 7, 2005, Hartford wrote to Dr. Stephen V. Jochen, Robinson's treating chiropractor, inquiring as to her status and her ability to perform a sedentary and light occupation.  (AR 411.)

14. On June 17, 2005, Dr. Jochen responded to Hartford stating, "Due to [Robinson's] severe degenerative condition in her low back and neck, patient is unable to walk greater than 30 minutes without pain and can't drive more than 20 minutes without pain. Based on our findings, it is the opinion of this office that Edythe Robinson is permanently disabled from working any sedentary or light occupational tasks."  (AR 412.)

15. On October 8, 2005, pursuant to Hartford's request, Robinson underwent another IME, which was performed by Dr. Paul Leonard.  (AR 1034-42.)

16. In Dr. Leonard's IME report, he stated that he received and reviewed approximately twenty-two (22) individual reports, tests, opinions and studies on Robinson, "covering multiple musculoskeletal and other system conditions."  (AR 397-98.)

17. In addition to record review, Dr. Leonard also examined Robinson; however, his examination was limited to Robinson's spine.  (AR 402.)

18. Based on his examination, Dr. Leonard concluded that Robinson was not disabled and was "capable of significant employment."  (AR 402-03.)

19. Hartford sent the second IME report to Robinson's treating physicians and requested their concurrence with Dr. Leonard's opinion.  (AR 341.)  The report was sent to four (4) doctors: Dr. Moddaber (AR 422), Dr. Horacek (AR 425), Dr. Jochen (AR 392), and Dr. Lum (AR 421).  The letter sent to each doctor contained the following paragraph:

1
2
3
4
5
6

> Based on this report and the medical documentation contained in her file it is our determination that Ms. Robinson currently has full-time sedentary or light work capacity.  If you agree with this assessment please sign and date below.  If your opinion is different than the conclusion of this report, please provide specific objective evidence in support of your conclusion.

7

8  (AR 340, 394, 422, 425.)

9  20. Drs. Moddaber and Horacek did not respond.  (AR 341.)

10  21. Dr. Lum's office also advised that he would not be responding.  (AR 341.)

11  22. On November 18, 2005, Dr. Jochen signed and returned the letter expressing his

12  agreement with the IME assessment.  (AR 392.)

13  23. In a letter dated January 5, 2006, Hartford advised Robinson that she was no longer

14  "Totally Disabled" and that her LTD claim had been terminated as of January 4, 2006.

15  (AR 338.)  The letter cited the relevant Policy provisions and the basis for Hartford's

16  decision, and informed Robinson about her ERISA appeal rights, including the opportunity

17  to submit additional documentation.  (AR 338-43.)  Robinson contacted Hartford to

18  request an extension of the deadline to submit an appeal.  (AR 334-35.)  Hartford advised

19  Robinson that the last day to submit an appeal was July 10, 2006, 180 days after the

20  termination letter was sent.  (AR 323.)

21  24. On May 19, 2006, Robinson saw Dr. Mark Hodgson, an orthopaedic surgeon in the

22  Division of Hand, Upper Extremity & Microsurgery at the Medical College of Wisconsin.

23  (AR 242-43.)  His physical examination reflected that Robinson had "full range of motion

24  of the neck . . . without pain . . . . Range of motion of the shoulders is full, as are the

25  elbows, wrists and digits, without pain . . . ."  (*Id*.)  He further noted that "[t]here is no

26  evidence of muscular atrophy, strength is 5/5 throughout."  (*Id*.)  And he suggested that

27  Robinson was "to return to our clinic on as as-needed basis . . . ."  (*Id*.)  No work-related

28  limitations were provided.  (*Id*.)

25. On June 1, 2006, Robinson saw Dr. David Siverhus for an "evaluation of disability from prior right carpal tunnel syndrome and decompressions." (AR 272.) Dr. Siverhus completed a "Health Progress Report" with a diagnosis of "bilateral upper extremity complaints" and under "Physical Limitations" stated that Robinson should not be lifting or carrying over 5 pounds. (AR 271.) The section on "Duration of Limitations" was left blank. (*Id*.)

26. On June 5, 2006, Robinson saw Raj Rao, M.D., an orthopedic spine surgeon. (AR 240-41.) Dr. Rao's report reflected that Robinson underwent a physical examination of, among other things, her gait, neck, and bilateral upper extremities; and she underwent a neurologic exam of her upper and lower extremities. (*Id*.) Dr. Rao also reviewed x-rays of Robinson's cervical spine. (AR 241.) Dr. Rao's report noted that "patient had questions as to her ability to work." (*Id*.) Dr. Rao opined that "[f]rom a cervical spine point of view, the patient may resume work without any imposed limitations. If she had pain, reasonable limitations for her degenerative cervical spondylosis may be no lifting more than 15 pounds and no repetitive neck activity." (*Id*.)

27. On July 2, 2006, Robinson appealed Hartford's decision by letter, maintaining that her claim file was incomplete and did not accurately reflect her disability. (AR 178.) She attached additional medical documentation and a chronology of her conditions and treatments over the years, which she advised reflected a true picture of her medical condition. (AR 177-89.)

28. Robinson's file was referred to University Disability Consortium ("UDC") for an independent review, and letters were sent to three of Robinson's treating physicians, Drs. Lum, Jochen and Thomas Flatley, advising them that a physician from UDC would be contacting them and asking for their cooperation. (AR 168, 170, 172.)

29. A medical record review was conducted by UDC physician Robert Y. Pick. (AR 145.) Dr. Pick reviewed the records in Robinson's claim file as well as the records she submitted with her appeal. (AR 145-56.) Dr. Pick did not examine Robinson. (AR 145.)

30. In his September 28, 2006 report, Dr. Pick noted that when he spoke to Dr. Lum,

Robinson's internist, Dr. Lum said he had not seen her since January 2006. (AR 153.) Dr. Lum did not know if Robinson was working when he last saw her, but his recollection was that she was able to work. (*Id.*) Dr. Pick specifically asked Dr. Lum if Robinson could engage in sedentary work activities, and Dr. Lum replied in the affirmative. (*Id.*)

31. Dr. Pick also spoke to Dr. Flatley, who stated that he had not seen Robinson since June 2006, but that he believed she could work with limitations. (AR 153-54.) Dr. Flatley stated that Robinson could lift less than 15 pounds and engage in activities with no repetitive neck motions. (AR 154.) Further, he stated that he concurred with Dr. Rao's opinion that Plaintiff could work without any imposed limitations. (*Id.*)

32. Dr. Pick also noted several unsuccessful attempts to reach Dr. Jochen. (*Id.*)

33. Letters were sent to Drs. Lum and Flatley that repeated Dr. Pick's understanding of their respective conversations, and asked that they sign and return the letters if Dr. Pick's summary was correct. (AR 157-60.)

34. Dr. Lum signed the form, indicating that while he believed Robinson could engage in sedentary work activities, that "this should be evaluated at the present time." (AR 143.) He also added, "my last visit with Edith Robinson was 1/12/06 . . . . Additional diagnoses upon further review are cervical radiculopathy, S/P laminectomy, S/P hysterectomy, S/P lysis adhesions, OA mild. I do not recall ever having discussed disability or her suitability to work with this patient." (AR 143.)

35. Dr. Flatley signed the statement affirming his conversation with Dr. Pick, with no comments or additions. (AR 140-41.)

36. Dr. Pick opined, based on his review of the voluminous file, as well as his conversations with Drs. Lum and Flatley, that the key issues in the case were Robinson's stated subjective symptoms and complaints, with a paucity of objective substantive orthopedic/musculoskeletal findings. (AR 154.) In response to specific questions by Hartford, Dr. Pick opined that Robinson was able to engage in sedentary to light category work activities on a full-time basis. (AR 155-56.)

37. Based on a review of the evidence contained in the claim file, including the opinion

1  provided by Dr. Pick, the signed summaries by Dr. Lum and Dr. Flatley, and the

2  concurrence letter from Dr. Jochen on November 18, 2005, Hartford determined that

3  Robinson was capable of full-time work at the sedentary to light physical demand level.

4  (AR 6-10.)

5      38. On October 6, 2006, Appeal Specialist Kim Huber wrote Robinson a detailed letter

6  explaining why the denial of her claim was upheld on appeal.  (AR 133-38.)  She also

7  provided a copy of Dr. Pick's independent record review and copies of the signed

8  statements received from Drs. Lum and Flatley, pursuant to Robinson's request.  (AR 133-

9  38.)

10     39. Approximately one and a half years after Hartford's denial of Robinson's appeal,

11  Robinson wrote a letter to Hartford requesting a reexamination, enclosing additional

12  medical documentation, including a March 20, 2008 letter from Dr. Jochen which

13  "correct(s) and clarif(ies his) position on Ms. Robinson's functional capacity."  (Pl. Edythe

14  Robinson's Supplemental Docs. in Supp. of Disability 2-5.)  The letters and documentation

15  were not before Hartford at the time it made its October 6, 2006 determination regarding

16  Robinson's disability, and thus were not part of the Administrative Record.

17     40. The Plan contains the following language:  "The Hartford has full discretion and

18  authority to determine eligibility for benefits and to construe and interpret all terms and

19  provisions of the Group Insurance Policy."  (AR 1154.)

20     41. Hartford is acting as both the funding source and plan administrator with regard to

21  the LTD Benefits at issue in this case.  (AR 1141-57.)

22

23  **III.  CONCLUSIONS OF LAW**

24       The beneficiary of an ERISA plan may bring a civil action against a plan

25  administrator "to recover benefits due to him under the terms of his plan, to enforce his

26  rights under the terms of the plan, and to clarify his rights to future benefits under the

27  terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  As such, Plaintiff has standing as a Plan

28

and Policy beneficiary to bring this action against the plan administrator, Hartford, to recover benefits under the Plan.

### A. *Standard of Review*

The scope of judicial review of an ERISA benefits decision depends on whether the plan vests discretion in the administrator in determining benefits. *Bogue v. Ampex Corp*., 976 F.2d 1319, 1324 (9th Cir. 1992). The Court reviews a denial of benefits de novo, unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here, the Plan uses unambiguous language to provide discretionary authority to Hartford. Hence, the Court will review Hartford's decision for an abuse of discretion.[1]

However, in this case, as noted above, Hartford is acting as both the funding source and plan administrator. "An insurer with a 'dual role as the administrator and funding source for the [p]lan' has an inherent conflict of interest." *Nord v. Black & Decker Disability Plan*, 296 F.3d 823, 828 (9th Cir. 2002) (quoting *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 797 (9th Cir. 1997)) *overruled on other grounds by Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003). The

_____

[1] Robinson acknowledges in her Trial Brief that, in light of the Plan language, "it appears that the Court will review Hartford's decision to deny LTD Benefits for an abuse of discretion." (Doc. 37 at 16.) Although Robinson argues later in her Trial Brief that "the court should review the administrator's denial of benefits *de novo*," (Doc. 37 at p. 17) the Court notes that plaintiff inappropriately relies on the burden-shifting analysis of *Atwood v. Newmont Gold Co., Inc.,* 45 F.3d 1317 (9th Cir. 1995) for this proposition. *Atwood* was expressly overruled on that very point. *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 966-67 (9th Cir. 2006).

1  reviewing judge must take the conflict into account when determining whether the
2  administrator abused its discretion and must "temper the abuse of discretion standard with
3  skepticism 'commensurate' with the conflict." *Nolan v. Heald Coll.*, 551 F.3d 1148, 1153
4  (9th Cir. 2009) (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 959 (9th Cir.
5  2006)).

6      The Supreme Court has eschewed a "one-size-fits-all procedural system" for
7  weighing the significance of an administrator's conflict of interest, emphasizing that
8  benefits decisions and conflicts vary greatly from case to case, such that a conflict must be
9  weighed as one factor among many. *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2351
10 (2008). "[A]ny one factor will act as a tiebreaker when the other factors are closely
11 balanced, the degree of closeness necessary depending upon the tiebreaking factor's
12 inherent or case-specific importance." *Id.* The Court considers "the extent to which a
13 conflict of interest appears to have motivated an administrator's decision."

14

15     Other factors that frequently arise in the ERISA context include
16     the quality and quantity of the medical evidence, whether the plan
17     administrator subjected the claimant to an in-person medical
18     evaluation or relied instead on a paper review of the claimant's
19     existing medical records, whether the administrator provided its
20     independent experts "with all of the relevant evidence[,]" and
21     whether the administrator considered a contrary SSA disability
22     determination, if any.

23

24 *Montour v. Hartford Life & Accident Ins. Co.,* 588 F.3d 623, 630 (9th Cir. 2009). For this
25 reason, "[s]imply construing the terms of the underlying plan and scanning the record for
26 medical evidence supporting the plan administrator's decision is not enough . . . ." *Id.*
27     Under an abuse of discretion standard, courts are generally limited to review of the
28 Administrative Record. *See, e.g.*, *Jebian v. Hewlett-Packard Co. Emp. Benefits Org.*

1  *Income Prot. Plan,* 349 F.3d 1098, 1110 (9th Cir. 2003).  Although the court may consider

2  evidence outside the record if it is relevant to the administrator's conflict of interest, the

3  review of the merits of the administrator's decision "must rest on the administrative record

4  once the conflict (if any) has been established by extrinsic evidence or otherwise." *Abatie*,

5  458 F.3d at 970.  Extra-record evidence may also be admitted when procedural

6  irregularities by the administrator "prevented the full development of the administrative

7  record.  In that way the court may, in essence, recreate what the administrative record

8  would have been had the procedure been correct." *Id.* at 973.  This rule, however, does not

9  provide license to admit documents and medical reports that did not exist at the time of the

10 administrative determination.  *See LaMantia v. Hewlett-Packard Co. Emp. Benefits Org.*

11 *Income Prot. Plan*, 281 Fed. Appx. 664, 666-67 (9th Cir. 2008).

12

13      **B.  *Application of Standard of Review***

14          To show both a conflict of interest and an abuse of discretion, Robinson requests

15 that this Court review documents outside the Administrative Record.  The Court rejects

16 that request.  The documents consist of a March 31, 2008 letter from Robinson requesting

17 "reexamination" along with attachments including various letters and report.  All but three

18 of the documents post-date the October 6, 2006, denial of benefits.  The Court will not

19 consider any of these post-dated documents as they were not in existence at the time of the

20 administrative decision.  Of the three documents that existed prior to the administrative

21 decision, two are already part of the Administrative Record (AR 247-49), and none appear

22 to be relevant to any conflict-of-interest analysis or to a finding of procedural irregularities,

23 nor does Robinson argue their significance.  *See Abatie*, 458 F.3d at 970, 973.

24          When limited to the Administrative Record, Robinson argues that Hartford abused

25 its discretion in denying LTD Benefits by (1) failing adequately to consider or address the

26 prior disability determinations by the Social Security Administration, Dr. Neer in his 2001

27 IME,, and Robinson's treating chiropractor, and (2) focusing only on Robinson's spine,

28 despite the fact that she had a number of conditions contributing to her disability.

1    The Court agrees with Robinson that Dr. Leonard's IME failed adequately to

2   address the Social Security Administration's 1999 disability finding.  His report simply

3   noted that Robinson "br[ought] in a copy of a Social Security Administration decision or

4   (sic) 23rd, 1999.  Social Security benefits were awarded."  (AR 398.)  His report did not

5   explicitly reflect whether he considered the Social Security Administration's

6   determination, nor did it explain why he came to a contrary conclusion.  This omission

7   may indicate a lack of "a principled and deliberative reasoning process."  *Montour,* 588

8   F.3d at 635 (quoting *Glenn v. MetLife*, 461 F.3d 660, 674 (6th Cir. 2006)).  On the other

9   hand, the Court does not agree that Dr. Leonard failed to consider or address the

10   determinations by Drs. Neer and Jochen.  Dr. Leonard's report reflected that he discounted

11   Dr. Neer's 2001 report because it relied on MRIs that were several years old, and

12   moreover, because Dr. Leonard reviewed the MRIS and disagreed with Dr. Neer's

13   findings.  Similarly, Dr. Leonard indicated that he reviewed a May 27, 2005, MRI report,

14   which purportedly formed the basis of Dr. Jochen's opinion, and found the MRI to be

15   "totally benign."

16    As for the scope of Dr. Leonard's exam, while he made reference to prior medical

17   records relating to Robinson's other conditions, he did not appear to sufficiently address

18   conditions other than those relating to Robinson's spine.  Indeed, he stated "(b)ased on

19   today's examination, *limited to the spine*, she has no more disability than she had while

20   working full time and being without substantial symptoms."  (AR 402) (emphasis added).

21   He further stated "[t]*he spine will not limit her employment*, except to require occasional

22   changes of position, and limitation to no heavy work, no lifting or carrying over 20

23   pounds."  *Id.* (emphasis added).  Hence, neither his examination nor his conclusion

24   addressed possible disabling conditions other than the spine.

25    Although the shortcomings in Dr. Leonard's report are factors to be considered in

26   determining whether Hartford abused its discretion, the Court must consider the

27   Administrative Record as a whole.  When the entire Administrative Record is considered,

28   including not only the additional opinion of Dr. Pick after a medical records review, but

also the opinions of Robinson's treating physicians Drs. Jochen, Rao, Lum, and Flatley, the Court concludes that Hartford did not abuse its discretion in denying Robinson LTD Benefits.  The opinions of those treating physicians were more current than either the 1999 Social Security Administration determination or the 2001 IME, and there is nothing in the record to indicate that Dr. Pick's analysis was restricted to Robinson's spine.  It appears that Dr. Pick reviewed relevant medical records pertaining to the whole array of conditions for which Robinson had sought treatment.  While Robinson argues that Dr. Pick's record review failed to account for Dr. Siverhus' 5 lb. lifting limitation, the Court notes that Dr. Siverhus' report appears to be based on stale data, and that he recommended further testing regarding Robinson's bilateral upper extremities.  Instead, Dr. Pick appears to have relied upon the more extensive evaluations of Drs. Rao, Flatley and Hodgson, which included examination of Robinson's upper extremities and did not indicate any work-related limitations in that regard.  Finally, the Court concludes that Hartford was entitled to rely on Dr. Jochen's letter expressing agreement with the assessment that Robinson could perform full-time sedentary work.

## C. Conclusion

Although the Court reviews Hartford's LTD Benefits determination under an abuse of discretion standard, because there is a structural conflict of interest, the Court considers that conflict as a factor in determining whether Hartford abused its discretion.  Here, the Court gave some weight to that factor because the doctor who conducted the IME failed to address properly the contrary Social Security Administration disability determination and appeared to limit his examination and conclusion to only one of Robinson's potentially disabling conditions.  The Court, however, finds that Hartford reasonably relied on opinions of Robinson's own treating physicians, which Robinson obtained during the administrative appeal process, in determining that Robinson did not qualify as totally disabled.  Therefore, on balance, the Court finds that Hartford did not abuse its discretion in denying benefits.

1    For the foregoing reasons, the Court finds in favor of Defendants.  Defendants are

2    ordered to prepare and submit a judgment consistent with this order.

3

4    DATED: November 22, 2010          **JOSEPHINE STATON TUCKER**

5                                      UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28